# UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHRISTOPHER L. WRIGHT, | ><((((°> | Case: 1:20-cv-00306 JURY DEMAND |
| | ><((((°> | Assigned To : Cooper, Christopher R. |
| Plaintiff | ><((((°> | Assign. Date : 2/5/2020 |
| | ><((((°> | Description: Employ. Discr. (H-DECK) |
| V. | ><((((°> | COMPLAINT |
| WILBUR L. ROSS, Secretary | ><((((°> | |
| U.S. Department of Commerce, | ><((((°> | |
| Defendant | ><((((°> | JURY TRIAL REQUESTED |

## COMPLAINT

1. I come to this Court with heavy heart and after exhausting every avenue through the Federal government's and the Department of Commerce's (Department) regulations, process, and procedures for addressing discrimination and harassment to request relief from the systemic toxic work environment that has caused me tremendous harm physically, mentally, financially, and professionally. I am extremely tired both physically and mentally by the chronic discrimination, harassment, and retaliation, perpetrated towards on me by the Office of Sustainable Fisheries (Office) leadership since 2012, and by witnessing the same discriminatory behavior directed towards my colleagues. The leadership and managers in the Office have abused their staff without any consequences, and the Department has enabled this abuse of power to go unchecked by not acting in good faith, using every delay tactic, and by not fully investigating and fairly addressing the claims that I, and my colleagues, have brought to their attention.

**RECEIVED**

FEB 0 5 2020

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

2. On November 9, 2019, I received the Department's final decision on my first complaint (Complaint Number 54-2019-00098) where all of my claims were dismissed (*See Exhibit 1*). This notification stated that if I disagree with the decision: "*A civil action must be filed within 90 calendar days of the date of receipt of the final order if no appeal has been filed. See 29 C.F.R. § 1614.408(a).*" Alas, my saga continues, along with the ongoing discrimination, harassment, and retaliation, and I pray for this Court to grant me relief.

I.      The Parties to this Complaint

3. Plaintiff

Christopher L. Wright
Fishery Policy Analyst
105 Rabbits Rest Lane
Shepherdstown, WV 25443
chris.wright@noaa.gov (work)
hiodon@yahoo.com (home)
301-427-8570 (work)
304-876-1834 (home)
240-342-1719 (cell)

4. Defendant

Wilbur L. Ross
Secretary
U.S. Department of Commerce
1401 Constitution Ave NW
Washington, DC 20230
202-482-2000

5. Place of Employment

National Oceanic and Atmospheric Administration (NOAA)
National Marine Fisheries Service (NMFS)
1315 East-West Highway
Silver Spring, MD 20910

II.      Basis for Jurisdiction and Venue

6. The Defendant in this case is Wilbur L. Ross, Secretary, U.S. Department of Commerce. The Secretary's official address is: 1401 Constitution Ave., NW, Washington, DC 20230.

7. This Court has jurisdiction pursuant to Title VII of the Civil Rights Actions of 1964, 42 U.S.C. §2000(e)-(f), as amended ("Title VII") to redress employment practices of the Department in violation of these statutes.

8. Venue is proper in the District of Columbia because: 1) the Department is headquartered in the District of Columbia, the Department does business in the District of Columbia, the business records of the Department are maintained in the District of Columbia, and because many of the unlawful practices described herein occurred in the District of Columbia; 2) The Office of Civil Rights and the Department Office of Inspector General are located in the Department headquarters office in the District of Columbia; 3) In addition, the location of decision makers who dismissed my claims, per the claims in this complaint, are located in the District of Columbia; and 4) ultimately the Secretary has sole responsibility for the actions of his managers and leadership at NOAA/NMFS.

9. The Age Discrimination in Employment Act of 1967 (Pub. L. 90-202) (ADEA) claim is governed by the general venue statute. *See* 28 U.S.C § 1391 (e); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3825 (4th ed. 2019) ("Congress did not pass . . . a [venue] provision with regard to the ADEA). Thus, the general venue provision…governs as to ADEA actions.").

10. Venue is proper in a jurisdiction 1) where a defendant in the action resides; 2) where a substantial part of the events giving rise to the claim occurred; and 3) where the plaintiff resides. See 28 U.S.C. § 1391 (e)(1); *see also Webster v. Mattis*, 279 F. Supp. 3d 14, 19 (D.D.C. 2017).

11. The Plaintiff lives in Shepherdstown, WV, and works in Silver Spring, MD. The District of Columbia is the most logical forum in which to litigate the claims of the Plaintiff just on the basis of logistics. The Department is headquartered in Washington, District of Columbia, and many of the unlawful practices and Agency decisions described herein occurred in the District of Columbia. Therefore, the proper venue is in the District of Columbia Court.

III. Statement of Claims

III.A. Plaintiff files this case under the following laws (in no particular order):

1. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 – (Sex/Gender, retaliation, harassment, and bullying);
2. Age Discrimination in Employment Act of 1967;
3. Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117;
4. Family and Medical Leave Act;
5. Rehabilitation Act (discrimination on the basis of handicap);
6. Equal Pay Act (sex-based); and
7. Fair Labor Standards Act of 1938.

12. There are multiple claims, and each claim has an element of one or more of the above applicable laws. The claims include various elements: discrimination (based on age, sex/gender, retaliation, medical condition/disability, etc.), bullying, aggressive posturing, harassment, disparate treatment, non-selection, failure to hire, failure to promote, wrongful disclosure of confidential medical information, systemic toxic/hostile work environment, and retaliation from being a witness of these negative behaviors and discrimination conducted to other Office staff.

III.B.  Office of Sustainable Fisheries Leadership

13.  The following list are the supervisors and/or leadership in my Office who were, at one point or another, officially signing documents regarding my performance, and/or were directly involved or knew of the discrimination, harassment, and retaliation.  There were also numerous individuals who were my acting supervisors for shorter periods of time since 2012 that also played a role in this negative behavior and creating a toxic and hostile work environment, e.g., Lindsay Fullenkamp.

- Seema Balwani, Chief, Policy & Guidance Branch - July 2012 to November 2015.
- Emily Menashes, Deputy Director, Office of Sustainable Fisheries – June 2007 to March 2017.
- Kelly Denit, Chief, Domestic Fisheries Division – September 2016 to Present; Chief, Fishery Management & Coordination Branch – July 2012 to August 2016.
- Alan Risenhoover, Director, Office of Sustainable Fisheries - July 2006 to December 2019.
- Lindsay Fullenkamp, Acting Chief, Fishery Management & Coordination Branch - April 2017 to December 2017.
- Rachel Baker, Chief, Fishery Management & Coordination Branch - January 2018 through January 2019.
- Casey Brennan, Acting Chief, Fishery Management & Coordination Branch – March 2019 to July 2019.
- Galen Tromble, Chief, Domestic Fisheries Division – 2004 to April 2016.
- Jennifer Wallace, Deputy Director, Office of Sustainable Fisheries – March 2019 to Present; Acting Director – January 2020 to Present.
- Alesia Read, Acting Chief, Fishery Management & Coordination Branch – July 2019 to December 2019.

III.C.  Statement of Facts

14.  The facts of my case are as follows:

III.C.1.  1st Complaint - Complaint Number 54-2019-00098 -- March 16, 2018  *(See Exhibit 2)*

15.  The formal grievance regarding my 2017 performance rating, and also Equal Employment Opportunity (EEO)/Harassment complaint, are the impetus for my formal

complaint when I confirmed that senior leadership had lied to protect their lower level managers. I have tried to use every avenue through informal communication with my Office leadership and through the administrative grievance process, however, have received no relief. I believe that, at minimum, these cover the laws cited above (See III.A), and by abusing their power and abusing the performance rating system pursuant to DAO 202-955.

16. Ms. Kelly Denit, Ms. Emily Menashes, Mr. Galen Tromble, Mr. Alan Risenhover, and Ms. Seema Balwani were the supervisors and/or leadership in my Office who were officially signing documents regarding my performance. There were also numerous individuals who were my acting supervisor for shorter periods of time since 2012 that also played a role in this negative behavior and creating a toxic and hostile work environment, e.g., Lindsay Fullenkamp. Given the time constraints of the EEO process it is difficult to list every action/comment in this document. In addition, Ms. Denit has been excessively adding projects and tasks for me to do since August 2017, which has resulted in my having less time to address all of the requirements related to the EEO complaint process. During this time I was under the direction of my doctor to stay at home and work a reduced workload (and workday, 4-6 hours) due to a serious/life-threatening health condition.

17. In general, the harassment and retaliation has been going on since 2012 when Ms. Balwani became my supervisor. Ms. Balwani initiated the harassment, and this harassment and retaliation has continued under supervision of Ms. Denit. This unfair bias has been passed on from one supervisor to the next. At this early stage of harassment, Mr. Tromble (who had supervised me from 2006 to 2012), tried to address some of the issues, but after he retired, the retaliation from Ms. Denit and leadership, who were complicit to the harassment or ignored my concerns, continued. This negative behavior was exemplified during the performance cycle

feedback sessions when Ms. Balwani, Ms. Denit, and Mr. Tromble made false statements regarding my performance. Mr. Tromble did attempt to resolve some issues with Ms. Balwani in 2014, however, from what I was told by Mr. Tromble during my FY2013 performance review, Ms. Menashes, continued the retaliation by making false statements to him regarding my performance with the major element in my performance plan, i.e., fishery disaster assistance. Mr. Tromble then included these false statements in my review, and after a lengthy discussion with Mr. Tromble on why I thought these were false, Mr. Tromble stated that he did not know all of the work I had done and suggested that I grieve the review through the administrative grievance process during that feedback session. Ms. Denit has continued this harassment, bullying, and retaliation since that time after she became my supervisor (more specifics below). Given Ms. Mensahes' statement in her response (December 15, 2017) to my consideration for my FY2017 review, my impression is that Ms. Mensahes is complicit in this harassment/retaliation. In addition, her overt statement that she would not review the e-mails attached to my request tells me that she may be the instigator in this negative behavior by her staff.

18. Both Ms. Menashes and Mr. Risenhover failed to adequately address major issues (I raised) during the administrative grievance process regarding an overt action from Ms. Balwani in FY2013 where she failed to revise my performance plan. Ms. Balwani and I agreed that my duties had changed significantly and (that my performance plan) needed to be revised during my Mid-Cycle feedback meeting. Ms. Balwani lied to Mr. Risenhover on knowing of this agreement and revised plan, and he provided no relief, even after I provided him e-mail evidence that showed she had received the revised plan. I believe Ms. Balwani and Ms. Menashes colluded on this nefarious behavior towards myself. I came to this conclusion when I met with Ms. Menashes during the reconsideration meeting in late 2013 where she stated: "it was your

responsibility to make sure Ms. Balwani enter the revised plan into the performance system." I believe the ongoing harassment, bullying, and retaliation was magnified because I tried to have my concerns addressed.

Department's List of Claims from the 1st Complaint - Complaint Number 54-2018-00089

19. He was "systematically pushed aside" from getting a Branch Chief position he sought in 2012.

20. With respect to his performance ratings:

a) He has received unfavorable performance ratings since 2012, which including false statements about his performance and ratings and which have not addressed the full scope of his duties.

b) Kelly Denit refused to acknowledge that he was on restricted work from June to October 2017 in his performance feedback for his 2017 rating.

21. With respect to his work assignments and the performance of his duties:

a) Denit has been "excessively adding projects and tasks" for him to do since August 2017.

b) He has been assigned new areas of work outside his existing expertise and well outside the scope of his job description.

c) He has been excluded from opportunities to gain exposure with senior leadership.

d) He has been told that he is not performing at a Band IV level, but has been micromanaged and told he is stepping out of line when he takes initiative or attempts to fulfill job responsibilities as a lead on projects.

e) He has been denied opportunities to act for leadership when Agency leadership are out of the office.

f) A severe medical condition which started in June 2017 restricted his working day to four (4) to six (6) hours at home teleworking until October 2018. Denit added additional duties during this timeframe which was not designated in his performance plan, which hindered his ability to work on his larger projects. He states that these duties, most/many of which were administrative in nature, could have easily been conducted by entry-level employees, who had less work in their portfolio. He says that one added project (reviewing comments) had a tight deadline where he had to work longer days (beyond his medical restrictions) to be able to finish.

g) Seema Balwani and Denit have put restrictions on his communications and activities.

22. He has received no relief through the administrative grievance process regarding his concerns.

23. Agency management engages in acts of physical posturing and intimidation, such as Denit who uses "clenched fists" and "arms raised at sides and puffed chest" when in conflict.

24. His medical information was shared with others outside his direct line of supervision without his consent.

III.C.2. 2nd Complaint - Complaint Number 54-2019-00098 – March 12, 2019 (*See Exhibit 3*)

25. His Fiscal Year (FY) 2019 performance rating was not an accurate reflection of his actual performance, and adversely affected his performance-based salary. Additionally, the rating contains inaccurate examples and unsubstantiated accusations.

26. He has been excluded from higher leadership meetings and prevented from interacting with leadership, in order to limit his ability to perform his job efficiently.

27. Emily Menashes has directed her friends who she placed into leadership positions to harass and bully him.

28. Travel reimbursement has been used against him as a weapon.

29. In an e-mail exchange with Rachel Baker, Baker degraded his experience, accused him of not doing his job, and then scheduled additional check-ins and reviews, and had him perform duties which were regularly assigned to other staff, even though these duties are outside his area of expertise, and can easily be done by others.

30. Baker just finalized his performance plan for FY 2019, then a week later she and Kelly Denit added duties and responsibilities to his portfolio, with the expectation that he is supposed to "just absorb" these extra duties and still accomplish the other duties laid out in his performance plan.

31. When he has brought up workload issues, Denit and other supervisors say that he is a "Band IV" and has "to figure it out."

32. Denit failed to recuse herself from an interview panel for a leadership position for which he was being interviewed, "severely hamper[ing] [his] ability to escape and find another position."

33. In December 2018, he requested that Risenhoover transfer him out of the Office and "the toxic work environment." However, Risenhoover stated that he (Risenhoover) had received no evidence to date that he (Complainant) is being targeted. Further, despite repeatedly bringing up allegations of harassment to Risenhoover and other leadership, his concerns have not been adequately addressed.

III.C.3.  3rd Complaint – August 3, 2019  (*See Exhibit 4*)

34.  The retaliation and harassment by Office leadership from my actions to raise issues regarding my performance ratings since FY2013, associated EEO/Harassment complaints, and being witness to other staff in the Office being discriminated by leadership are the impetus for my formal complaint today.  I have endured the ongoing discrimination, bullying, harassment, and retaliation on since 2012.

35.  There is empirical evidence of Ms. Denit's and other leadership's lies and false statements regarding my performance and their retaliation for my bringing their nefarious actions to the attention of the Agency.  I believe the ongoing retaliation comes from my Formal Complaints related to my performance, and from my previous EEO complaints [Complaint Numbers: 54-2018-00089 and 54-2019-00098].

36.  I have tried to use every avenue through formal and informal communication with my Office leadership and through the administrative grievance process, however, have received no relief.  I believe that for these latest negative actions cover the Age Discrimination in Employment Act of 1967, harassment, bullying, and retaliation using the performance rating system pursuant to DAO 202-955, and the NOAA Telework implementation Plan and the Office of Sustainable Fisheries Work Schedule, Time and Attendance, and Telework Policy.

Project Plans and Differential Treatment

37.  *"On May 23, 2019, you were required to prepare  project plans with arbitrary due dates by Casey Brennan, Acting Chief of Staff and Kelly Denit, Supervisory Fishery Management Specialist, as a means to scrutinize your work assignments and harass you."*

38. I believe, my acting supervisor, Casey Brennan, was directed by Kelly Denit to retaliate against me using project timelines. Ms. Denit routinely overloads myself and other harassed staff with additional duties, then dictates unreasonable deadlines that are arbitrary to any Agency mission or goals or that are a time sensitive initiative. When I and other staff raise issues related to meeting these deadlines due to the presence of other competing time sensitive tasks I am working on, Ms. Denit then refuses to take these concerns into consideration. Ms. Denit then herself, or directs her Branch Chiefs, to severely reduce performance scores and use the "missed deadlines" as the reasoning for lowering scores, thus reducing and eliminating any performance based pay increase. I believe Ms. Denit's other purpose is to make these false statement regarding performance to build a case to then remove me or the other staff from our positions, and/or to harm us by inhibiting us from escaping the systematic toxic work environment because many Federal agencies require performance reviews to be provided for applying for job announcements.

39. I raised these issues regarding project plans to Mr. Brennan in a meeting on May 23, 2019, where Mr. Brennen stated that they wanted specific deadlines for the 2 added projects that were added late in December 2018, after my performance plan was finalized. There was a 3rd project added to my plan in December, an Aquaculture rulemaking project. This project was put on hold in late January 2019, but was not removed from my performance plan. I requested that this be removed. Of the two newly added projects, I prepared the package for one project (EFPs, SRPs, and LOAs Policy-Procedures), and submitted for Ms. Denit's review via Mr. Brennan review before they could dictate an unreasonable deadline, and gave a tentative schedule of the Agency review and timing (submitted on May 30, 2019). Note, the EFP Policy review was assigned to a lower level staff, Mr. Blackburn, well over 10 years ago. However, this project

was never completed because leadership, including Ms. Denit, never took the time to review and move it along.

40. For the second project (Monitor National Marine Sanctuary - Rescission of the Fishing Activity Prohibition Project), I submitted a general timeline with the target to publish the proposed rule by the end of August 2019 (submitted on May 31, 2019). In my target, I specifically informed Mr. Brennan that August 2019 was just a 'target' because another proposed action by the NOS National Marine Sanctuaries Program was targeting September, and could be affected by not starting the Rescission Project prior.

41. Ms. Denit also added an additional task related to my MRIP element. Ms. Denit wanted me to vet some issues related to the draft Data Standards Document, which had a provision that certain recreational estimates would not be published if they were above a 50% PSE threshold [Data Standards (PSE Threshold) - Rationale for Management Use of Unpublished MRIP Data Project Plan; submitted on May 31, 2019. In response to this additional task, I raised my uncertainty of what I was being asked to do with the MRIP task, and also the priorities of the other two projects. In response, Ms. Denit and Mr. Brennan told me to "focus on the MRIP task first." However, I was given vague direction on what exactly Ms. Denit wanted.

42. On June 20, 2019, Mr. Brennan gave me a revised project based on his direction from Ms. Denit. I told Mr. Brennan that the dates did not match the tasks and were out of sequence per the usual timeline for the rulemaking process. I also mentioned that the deadlines did not account for my delay of 2 weeks to address the MRIP Data Standards task, which I was directed by Ms. Denit to focus on first. Therefore, I requested Mr. Brennan that this timeline needs to be revised accordingly. Mr. Brennan said he would not revise. I also requested that the

project plan specifically have the caveats noted per my draft project plan, so that Ms. Denit could not say later that I did not warn them that there may be issues in the development or review that were outside my control and would delay various steps. Mr. Brennan would not provide this in writing. I suspect he was under direct orders from Ms. Denit to obfuscate this verbal flexibility in the targeted deadlines now listed in the revised project plan. I clearly stated to Mr. Brennan that I had past and ongoing experiences with Ms. Denit lying, and that I had "zero trust in her and her statements." Mr. Brennan did not want to know about the evidence, and refused to listen to my concerns. I am unaware if Mr. Brennan raised my concerns of lying to Ms. Denit's supervisor or other leadership, which is required under Agency policies.

Non-selection:

43. *"On June 18, 2019, you learned that you were denied an interview for the position of Supervisory Fish and Wildlife Administrator, ZP-0480-5, by Jennifer Wallace, Deputy Office Director."*

44. At our Division's Staff Meeting on June 18, 2019, Ms. Denit stated that the Office Atlantic HMS Division Chief interviews were completed. For this position, I was referred and was rated: "You are among the best qualified candidates and have been referred for the 'next step' in the selection process." However, I was excluded from the interviews, which was the 'next step.' I believe that I was not interviewed for the HMS Division Chief position because I have multiple EEO complaints against Office leadership, and that this is retaliation.

45. In a recent position announcement at the same level (Band V) in Greater Atlantic Regional Fisheries Office for the Sustainable Fisheries Assistant Regional Administrator I applied, I was also among the best qualified candidates. However, I was interviewed for this position. This shows that when my Office leadership in headquarters do not have input into a

similar level hiring, I can at least make the interviews. However, I still believe that they have influence on these selections, and have blacklisted myself and other pariahs.

46. *"On March 5, 2019, you learned that you were denied an interview for the position of Supervisory Fish and Wildlife Administrator, ZP-0480-5, by Alan Risenhoover, Director, Office of Sustainable Fisheries."*

47. In the Office Director hiring, I also was not interviewed. I believe that I was not interviewed for the Office Director because I have multiple EEO complaints against Office leadership, and that this is retaliation.

48. I believe that Agency leadership are blacklisting me for potential positions inside and outside my Office as retaliation for my EEO complaints regarding their discrimination towards myself and for being a witness to the discrimination of other older staff.

49. I have been blacklisted from moving into other positions within our Office and in other parts of NOAA. I also strongly suspect that these same individuals have also made false statements on my work to potential employers from other Federal agencies.

Misuse of Agency Telework Policies and Differential Treatment:

50. *"On July 21, 2019, my request for telework request to add Tuesday/Wednesday/Thursday during the weeks from July 15-26 was approved on the condition that I provided 'additional information' on my work in my sign out e-mails."*

51. Given the expedited timeline and deadlines in the project plans, I could not achieve the arbitrary deadlines. Then my acting supervisor, Casey Brennan, was directed by Kelly Denit to retaliate using telework.

52. On June 25, 2019, I notified Mr. Brennan that my Court scheduled time with my children for their summer vacation would occur July 15-26, 2019. I stated to Mr. Brennan that given that the deadlines for the projects, especially the Monitor rulemaking, that I would not have the time to meet the arbitrary deadline. Given the lack of flexibility, and my fear of not meeting the deadline, I offered to forgo my summer vacation with my older children. However, I would still need to supervise the children and would only be able to facilitate this if I was able to telework additional days Tuesday/Wednesday/Thursday during the weeks from July 15-26, 2019 (Normal telework days were Monday and Friday). Mr. Brennan asked me if I was not granted my request to telework what I would do. I responded and said I would have to take either sick or annual leave.

53. On July 11, 2019, (over two weeks after my request) Mr. Brennan came to my office/cubicle and told me my request to telework was approved on the condition that I provided "additional information" on my work in my sign out e-mails. However, I told him that I was confused and said why I had to give more than what I typically do for my teleworks days (Mon./Fri.). I tried to ask questions or glean additional information through different approaches, and he just continued to state Ms. Denit wants "additional information." He then got frustrated, and demanded that I write out the demand/question from Ms. Denit on regarding what "additional information" that I will provide…It was very embarrassing because other staff could hear our discussion. I had mentioned I had more autonomy when I was a Band III in the Region, and did not understand why after 23 years of teleworking I now have to provide 'additional information' on my daily tasks. I also stated that this was a "bring me a rock situation," and that this was retaliation from Ms. Denit. No response was given by Mr. Brennan. He just said I need to come up with solutions to the request for "additional information." So, I brought up my

Monday e-mail telework sign-off and gave a couple suggestions, e.g., copying the file network map for each document I saved for some research I conducted in the morning. I showed him that this file map would give the document title, and it would show the time/date when it was saved to the network. I said given the detail of the documenting my time this way is micromanagement and it would take a significant amount of time. I requested that they revise my performance plan to have documenting my time as a separate element for 10% of my time. He rebuffed this suggestion. I was not given any criteria or standard on what Ms. Denit wanted. I sent a sample sign-off e-mail with some additional information for my regular Friday telework day, but still to this date, have not received any feedback on if this or subsequent sign-off e-mails were adequate.

**Witness to other staff in the Office being discriminated, harassed, and bullied by leadership; and rejection of transfer request by the Office Director:**

54. I have repeatedly brought this harassment up to the Office Director (Risenhoover) and other leadership over the years and they have yet to address my concerns, or those of other staff for similar negative behavior towards them from Office leadership. He (Risenhoover) also refused to reassign me and other mistreated staff to other positions in the Agency.

55. The retaliation and harassment has continued for me, and for others in the Office that are treated as pariahs due to our age. The Office is a toxic mess. The supervisors lead by intimidation and bullying. Some of these supervisors (e.g., Ms. Denit) even use threatening physical posturing, as though they were ready to assault staff, when confronted with their negative behavior or nefarious actions. I currently have heard accounts from 4 other staff that experienced the threatening physical posturing from Ms. Denit.

56. On June 6, 2019, I notified Mr. Risenhoover via e-mail regarding Ms. Denit's ongoing retaliation and discrimination. He responded via e-mail on June 12, 2019, and he again

chose to do nothing, and not address the systemic toxic work environment. Mr. Risenhoover (again) referred me to the EEO process. I again requested Mr. Risenhoover that I be transferred out of the Office and the toxic work environment. I believe Mr. Risenhoover lies through omission, or failed his duties to fully investigate my claims and my peers. In either case he is either lying to protect his leadership staff, or he is woefully incompetent.

57. My assessment of the EEO process and the Equal Employment Opportunity Commission (EEOC) is that they are just as bad as the discrimination that I and my colleagues endured, or are enduring, from my Office leadership who appear to be exempt from the Federal government and DOC/NOAA ethics and EEO regulations, policies, and procedures. The systemic toxic work environment in our Office has lead another staff member, Mr. Jason Blackburn, in my Division announced on July 29, 2019, that he is leaving Federal service. For years, Mr. Blackburn has witnessed younger female employees being hired after him and get promoted, while he was topped out at his grade. I must note he is a veteran, and it is shameful that the DOC, NOAA, and NMFS leadership do nothing to address valid claims of discrimination/harassment/retaliation, which leave staff to give up and quit serving our country. The EEOC process is woefully broken, and the long delay in resolving these issues and in forcing those Federal employees from bringing claims forward in this forum to then receive negative treatment is in itself a continuation of the discrimination and retaliation.

58. I have tried to address these issues through the administrative grievance process and the EEO process. The negative behavior of harassment, retaliation, and bullying continues with impunity by Office leadership. From my conversation with other staff, I have learned that most staff are fearful of bringing forward their own situations to you and others because they have witnessed the extreme retaliation towards myself and a few other staff who have tried to fight

back, and report the toxic work environment. It is clear that Agency leadership promote and condone through inaction the negative behavior by certain leadership that creates this systemic toxic work environment.

59. They use the performance review process and other monetary processes, e.g. travel reimbursement, telework, details, etc., as weapons. They have also blacklisted me and other staff in the Agency, and have undermined our ability to move to other Federal agencies. They also over-supervise and micromanage senior staff, and make staff feel that they have lost their abilities to do our job. This abnormal behavior of leadership in our Office is routine.

60. Leadership routinely add additional duties and responsibilities to our (older staff) portfolios, with the expectation that we're supposed to just absorb these extra duties and still accomplish the other duties laid out in my performance plan. When I and other staff have brought up workload issues like this, Ms. Denit and other supervisors say you're a "Band IV" and have to figure it out. Then they increase their retaliation, e.g., they use local travel reimbursement and other standard processes and delay or deny approval of our payments.

61. Leadership have also harassed other staff, and most are intimidated to say or do anything, because they have been witness to the few of us that have stood up and confronted the abusive behavior who have been severely retaliated against, and who have been blacklisted in moving to other positions in the Agency and with other Federal agencies. I have a witness list with the staff I know (have experienced or witnessed this harassment), but this is the "tip of the iceberg." Every time I reach out to other staff, they share their experience of harassment from Office leadership.

62. I am so weary of defending myself from the constant attacks. My health has suffered both medically and mentally, and the stress associated with working in the Office has caused a

severely unbalance work-life balance. I have had to give statements to multiple investigators for EEO and harassment claims by other staff, and given the overloading of projects by Ms. Denit I have had to do this on my personal time. I should not be required to be a witness, then be harassed if I raise these work conflicts to my supervisors.

63. The Office has a systemic toxic environment, and older experienced staff like myself are routinely mistreated and bullied. I really just want to continue to do good work, free of bias and harassment. If that is not possible in Office of Sustainable Fisheries, then I should be transferred out of the Office.

Amended Claims Added to 3rd Complaint

*Additional Claim 1. (See Exhibit 5)*

64. Ms. Denit and my new acting supervisor, Alesia Read, met with me on August 27, 2019, to discuss a project involving the Exempted Fishing Permits (EFPs) and Research Permits (SRPs) Policy/Procedures. In this meeting Ms. Denit repeatedly accused me of not doing my job, and was inferring that I am not performing at a Band 4 level. She specifically stated that she could not understand the delay in my progress with this project, even though she knew I was on vacation for two weeks in August and was directed by my acting supervisors, Casey Brennan and Ms. Read, to work on higher priority projects. Instead of talking about my project Ms. Denit made false accusations in front of my new acting supervisor that she believed that I am not able to work on multiple projects concurrently, and that the delay was caused by my inability to perform at some threshold. I asked about what threshold she was referring to and Ms. Denit could not definitively explain what this threshold of work would be.

65. I also stated repeatedly to Ms. Denit that I was not prepared to have every minute for my many projects and tasks documented for the last 6 weeks since our last meeting on this

EFP/SRP Project to prove that I was indeed working on multiple projects and that this project was much lower on the priority list. I also reminded Ms. Denit that this project was dumped on me because a lower level (Band 3) staff member, Jason Blackburn, refused to work on it anymore because Ms. Denit and her predecessor, Mr. Galen Tromble, sat on this for well over 10 years. Mr. Blackburn recently resigned from the Agency because he felt undervalued by leadership in the Office of Sustainable Fisheries (Office).

66. I believe Ms. Denit is overloading my portfolio, adding these additional projects to put pressure on me to either leave federal service, create a false record to have me put on a PIP/fired, and/or to continue to cause me severe stress. The stress from this harassment from Ms. Denit and Office leadership has caused me to suffer a severe medical condition in 2017 where I almost died, and Ms. Denit knew about this situation, however, she continues her ruthless attacks and harassment towards me. My doctors have all documented that there is nothing in my medical history to suggest that I have any medical predisposition for this condition and that it must be caused by the severe stress from my work. My advice from my primary doctor at my annual physical this past month was to change jobs.

67. I believe Ms. Denit created this situation on August 27th to create a false narrative of my performance to Ms. Read to taint this relationship, and to manipulate Ms. Read's perceptions of my work. This is clear discrimination, harassment, and retaliation.

68. I also must note that four more Office staff have left in just the last couple weeks to escape the stress caused from the systemic toxic work environment here in the Office. Ms. Denit at our staff meeting earlier in the day of August 27 made a statement that these departures (over 10 this past year) were an "opportunity to reshape the Office and her Division." Every staff member I talked to afterword considered this an ominous characterization that infers that Ms.

Denit and other Office leadership welcome these staff leaving, and for those that are being harassed see this as a clear sign that "reshaping" means getting rid of all of the senior staff (Band 4s) that are left...

69. Ms. Denit also noted that she had talked to Alan Risenhoover, Office Director, and Emily Menashes, former Deputy Director, who have been leading the Office for over 10 years, and that they stated that this was unprecedented, and that at least double the historical average. We have had no retirements. These are all pre-retirement professionals. Since Ms. Menashes left in March 2018, why is she conferring with Ms. Menashes on her staffing of the Office? *Additional Claim 2. (See Exhibit 6)*

70. For my FY2019 performance evaluation, there were numerous false statement and mischaracterizations in the feedback from Ms. Denit, Ms. Read, and Mr. Brennan. The score were very low, and therefore I received a very small pay increase.

71. Per below, I have notified Mr. Risenhoover again regarding the discrimination and harassment I have endured and that I have witnessed being done to my peers in my Office. No action was taken by Mr. Risenhoover.

72. This past year I have spent a significant amount of my work and personal time responding to investigators for not only my case, but other staff in our Office where I was a witness. I asked: "How can we account for all of this time spent on EEO and harassment claims, e.g., interviews, statement reviews, etc., which impacted my workload and ability to accomplish the already overloaded performance plan?" *Additional Claim 3. (See Exhibit 7)*

73. Ms. Read, at Ms. Denit's direction, made statements on November 18, 2019, regarding the progress of a project that I perceive accuses me of choosing to take care of my sick

child over work. I noted to her: "There are times when staff are forced to take sick leave, and you as an acting supervisor must take this into consideration. However, again you and Kelly forget these things, and then use this to make false characterizations of my performance." The project timeline was met in the end, but they used this as an example of where I am labeled as "deficient."

*Additional Claim 4. (See Exhibit 8)*

74. Ms. Denit attempted to block me from a briefing with senior Agency and Department leadership regarding a project that I was the lead on, and where I had prepared the briefing materials. Ms. Denit made threats regarding my upcoming Thanksgiving vacation and also brought up my raising workload issues as rationale for me not participating, with the overt threat that these would be in jeopardy if I did attend the meeting.

*Additional Claim 5. (See Exhibit 9)*

75. Non-selection for the Office's Operations & Regulatory Services Division Chief position (Band V), where I was again not interviewed even though I was among the most highly qualified applicants.

76. I believe that the corrupt leadership in my Office are using the hiring process to deny me the opportunity to compete fairly for these leadership positions because they know I am an ethical person, and in retaliation to bringing up my claims of discrimination, retaliation, and harassment against myself and other staff. Every selection for these leadership positions where I was denied the opportunity the individuals that were selected have much less experience and are known to be "yes people" that are willing to harass and retaliate against staff. Office leadership either allow for their "friends" to act or bring in outside people that they have vetted for their lack of ethics to act (to gain the minimum experience or time in the respective position). Then

purposely exclude myself and other experienced staff, that are known to be ethical people, to act, and then to interview for these positions.

III.D.   Other Facts

77.  I believe that defendants are still committing these acts against me.

78.  Exhaustion of Federal Administrative Remedies – Yes, I have exhausted all remedies that I am aware of.

79.  The Equal Employment Opportunity Commission has not issued a Notice of Right to Sue letter.  The EEOC did issue an order of dismissal on July 31, 2019 (See Exhibit 10), after I realized the forum was a futile exercise, where the Agency routinely did not act in good faith. The Administrative Judge failed to order the Agency to conduct a proper investigation after I prepared a valid motion, and this crippled my ability to prosecute my case.  The Administrative Judge was abusive and demonstrated severe bias for the Agency's attorney.

80.  Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the Defendant's alleged discriminatory conduct 60 days or more have elapsed.

IV.   Relief

81.  Wherefore, Plaintiff requests the following relief:

A.  Sanction:  Request to Re-investigate - Expedited

82.  The Department failed to develop an "impartial and appropriate factual record." Under 29 C.F.R. § 1614.108(e), the Record of Investigation (ROI) should include information related to the alleged discrimination, and interviews, as well as affidavits from a complainant's witness list before making a determination of findings.  The "independent" ROI investigator only interviewed the managers that were conducting the discrimination/harassment.

83.  According to EEOC website, *Section 1614.109(a) of 29 C.F.R. provides that upon appointment, the Administrative Judge will assume full responsibility for adjudication of the complaint, including overseeing the development of the record. The Commission intends that the Administrative Judge will take complete control of the case once a hearing is requested. Administrative Judges will preside over any necessary supplementation of the record in the hearing process without resort to remands of complaints to agencies for additional investigations. If an Administrative Judge determines that there is an incomplete or inadequate investigation, s/he may, however, issue an order directing the agency to complete its investigation within a specified period of time set forth in the order or directing that the agency show cause for its failure to complete the investigation within the 180-day period. Where an agency has not completed a timely investigation or has prepared an inadequate investigation, the Administrative Judge may issue an order on his/her own initiative or upon request by either party requiring a party to produce documents, records, comparative data, statistics, or the attendance of witnesses. Such order or request shall make clear that sanctions may be imposed and the type of sanction that could be imposed for failure to comply with the order within the specified time set forth in the order without good cause shown.[7] See, for example, Rountree v. Dept. of the Treasury, EEOC Appeal No. 07A00015 (July 17, 2001). Where the agency or complainant fails without good cause shown to respond fully and in a timely fashion to the Administrative Judge's order and/or the party has not otherwise cooperated in the discovery process, the Administrative Judge may impose sanctions pursuant to 29 C.F.R. § 1614.109(f)(3).[8] A showing that the noncomplying party acted in bad faith is not required. See Kramer v. Dept. of Justice, EEO Appeal No. 07A10108 (September 11, 2003), request for reconsideration denied, EEOC Request No. 05AA40050 (Dec. 8, 2003); Cornell v. Dept. of*

*Veterans Affairs, EEOC Appeal No. 01974476 (Nov. 24, 1998). Additionally, the Administrative Judge may, as a result of a discovery order issued pursuant to 29 C.F.R. § 1614.109(f)(3)(v), require the agency to bear the costs for the complainant to obtain depositions or any other discovery because the agency has failed to complete its investigation timely as required by 29 C.F.R. § 1614.108(e) or has failed to investigate the allegations adequately pursuant to Chapter 6 of this Management Directive.[9] See also Section IV.F of this Chapter.*

84. Given the incomplete investigation by the Department in this case, i.e., none of the witnesses I provided to the investigator were interviewed, I request that the Department pay for the depositions of these witnesses (including the acting supervisors not listed in the ROI), and/or the Department reinvestigate.

85. I brought this issue to the attention of Ms. Kimball, the ROI investigator, and she stated she would not interview any of my witnesses (see attached e-mail from Ms. Kimball). I don't believe the investigator acted in good faith to get the entire story and facts needed for the Court's/Department's decision.

B. Sanction: Awarding of Adequate Funds for an Attorney for the Plaintiff - Expedited

86. The EEOC has noted in other cases that Administrative Judges possess the authority to order a Party to pay attorney fees and costs to prevent a Party's misconduct in the future, so long as the sanction is appropriately tailored. *See Barbour v. United States Postal Serv., EEOC Appeal 07A30133 (2005); Harris v. United States Postal Serv., EEOC Appeal No. 07A30039 (2005).*

87. My experience to date in the EEO process has left me with the impression that the Department has not acted in good faith, and is biased towards leadership, even when they know these individuals have lied. The Agency and their attorney misrepresented the facts and law

during the settlement negotiations, and then used this false information in status hearings to sway the Administrative Judge. In addition, I have brought these claims of discrimination and harassment to senior Office leadership and the Agency since 2012 per Department and Agency policy for EEO related issues, and leadership and/or the Agency have not addressed the systemic toxic work environment that myself and other staff have endured (I can provide many more examples). The Department and Agency have not, and will not, act in good faith from my own experience and what I have observed from other harassed staff's experience, which is why I am in the last resort stage here with the this Court. Given the lack of good faith efforts to address my claims, the Department should pay for the depositions of all the witnesses, attorney's fees be awarded, and the matter be reinvestigated. This relief will to prevent Department's misconduct in the future, and during the hearing.

C. General Relief for Claims

88. Transfer/Reassignment to another Office, Agency, or Department, with full relocation expenses paid, if warranted, and at my current Band IV level and salary.

89. Modify my performance rating scores to reflect my true performance and increase it to a total of eighty five (85) points from the time when the discrimination/harassment started in 2012 to the present. Remove false and/or derogatory statements and any negative comments entered into my performance review under the 'deficiencies and recommendations' section starting from my FY2013 performance review to present. Increase salary per the raised scores, and compensate for any corresponding back pay. The monetary valuation for this is unknown, but could be easily calculated with the score/percentage pay increase breakdown for the Service.

90. Restore sick leave from stress related illnesses…132.5 hours.

91. Compensate for personal time spent responding to false statements and derogatory language from Mid-Cycle/Progress Reviews and End-of-Year Appraisals from FY2013 to present. On average this was, at minimum, 4-5 days for the each step for the respective review periods.

92. Compensate for personal time spent that dealt with and responded to the discrimination/harassment/bullying/retaliation EEO process. I have had to spend a considerable amount of my personal time, away from my family, reviewing the EEO regulations and preparing responses during the counseling and preparing a formal complaint. The Department is required to train staff on these EEO and harassment laws, and the training I have received to date does not adequately address the systemic toxic work environment paradigm in our Office. In addition, they have failed to address nefarious conduct of any bad manager; staff have no rights.

93. Compensatory damages - Compensate for pain and suffering from the discrimination/harassment/bullying/retaliation which cause severe stress and fear of loss of employment...$2,000,000.00, for causing/contributing to a life threatening illness and ongoing medical complications.

94. Promotion/hire to the Branch Chief position sought in 2012, or the various positions as Division Chief and/or Band V level, (where I was excluded from the interview stage), with the salary differential between current salary and what would have been received had I been promoted/hired for the period between the presumed promotion/hire date and the present.

95. Compensatory damages - If the above remedies for career/employment discrimination are not amenable, then, $1,000,000.00, for all foreclosed employment/advancement opportunities.

96. Attorneys' fees and Court costs; if warranted.

97. When available, allowing for me to gain supervisory experience in acting for Office leadership, or for other offices for acting/detail type leadership opportunities.

98. Compensate for materials, copying, faxing, etc.

99. Neutral references, if contacted by any potential other employer.

Demand for Jury

100. Plaintiff requests trial by jury of all issues triable of right to a jury.

Certification and Closing

101. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Christopher L. Wright

105 Rabbits Rest Lane
Shepherdstown, WV 25443
chris.wright@noaa.gov (work)
hiodon@yahoo.com (home)
301-427-8570 (work)
304-876-1834 (home)
240-342-1719 (cell)

Attachments

Exhibit 1.  FINAL AGENCY DECISION WITHOUT A HEARING - Complaint Number 54-2019-00098 -- Wright; November 1, 2019.

Exhibit 2.  Form CD-498A - Formal Complaint – Wright; March 3, 2018.

Exhibit 3.  Form CD-498A - Formal Complaint – Wright; March 14, 2019.

Exhibit 4.  Form CD-498A - Formal Complaint – Wright; August 3, 2019.

Exhibit 5.  E-mail from Wright to Redpath regarding Addition Claim 1; August 29, 2019.

Exhibit 6.  E-mail from Wright to Redpath regarding Addition Claim 2; November 14, 2019.

Exhibit 7.  E-mail from Wright to Redpath regarding Addition Claim 3; November 18, 2019.

Exhibit 8.  E-mail from Wright to Redpath regarding Addition Claim 4; November 21, 2019.

Exhibit 9.  E-mail from Wright to Redpath regarding Addition Claim 5; December 11, 2019.

Exhibit 10.  Equal Employment Opportunity Commission (EEOC) Order of Dismissal - Case 531-2019-00018X; July 31, 2019.