**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTOPHER L. WRIGHT**,<br><br>*Pro se* Plaintiff,<br><br>v.<br><br>**WILBUR L. ROSS, JR.**, *Secretary, U.S. Department of Commerce*,<br><br>Defendant. | Case No. 20-cv-306 (CRC) |

### MEMORANDUM OPINION

Christopher Wright is a veteran employee of the Office of Sustainable Fisheries within the National Oceanic and Atmospheric Administration ("NOAA"). In 2018 and 2019, he filed three separate administrative complaints with the agency's Office of Civil Rights alleging various instances of discrimination and retaliation based on his sex, age, and disability during the course of his employment. The agency issued final decisions finding no discrimination or retaliation with respect to the first two complaints and has not yet issued an investigative report or final decision on Wright's third complaint. Wright sued the agency in this Court under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1964 ("ADEA"), and the Rehabilitation Act, based on the discrimination and retaliation claims raised in all three administrative complaints. The Government has filed a partial motion to dismiss Wright's claims relating to his first and third administrative complaints based on the statute of limitations and lack of exhaustion, respectively. Because both parties rely on materials outside the pleadings, the Court will convert the Government's motion into one for summary judgment. Agreeing that the claims raised in Wright's first and third administrative complaints are barred, the Court will grant summary judgment to the Government on those claims.

I.  **Background**

    A.  Statutory Background

Generally, a federal employee who believes that his employer discriminated against him must seek administrative adjudication of his claim before filing suit in federal district court. "The procedural requirements governing a plaintiff's right to bring a [discrimination] claim in court are not mere technicalities." Hines v. Bair, 594 F. Supp. 2d 17, 23 (D.D.C. 2009). Rather, they are "part and parcel of the Congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." Patterson v. Johnson, 391 F. Supp. 2d 140, 145 (D.D.C. 2005) (quoting Kizas v. Webster, 707 F.2d 524, 544 (D.C. Cir. 1983)).

All three of the statutes under which Wright brings his claims—Title VII, the ADEA, and the Rehabilitation Act—are governed by the same set of exhaustion requirements.[1] See 42 U.S.C. § 2000e-16 (setting forth Title VII exhaustion requirements); 29 U.S.C. § 633a(b) (incorporating Title VII procedures into the ADEA);[2] id. § 794a(a)(1) (requiring claims brought

---

[1] Wright's complaint also invokes the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act, the Equal Pay Act, and the Fair Labor Standards Act. Compl. ¶ III.A. The ADA does not apply to the federal government. See 42 U.S.C. § 12111(5)(B)(i) ("The term 'employer' does not include the United States[.]"). As to the remaining three statutes, the mere invocation of their names is insufficient to establish Wright's entitlement to relief under Federal Rule of Civil Procedure 8(a). See, e.g., Fernanders v. Mich. Dep't of Military & Veterans Affairs, No. 12-11752, 2012 WL 3262861, at *3 (E.D. Mich. Aug. 9, 2012) ("Conclusorily stating, as Plaintiff does in the Complaint, that Defendants violated his rights under a laundry list of federal statutes is insufficient to establish a claim for relief under the Federal Rules of Civil Procedure."). Wright has alleged no facts that would plausibly support a violation of any of these statutes. Nor is there any indication that Wright raised claims implicating these statutes before the agency. The Court will thus dismiss all four claims.

[2] The ADEA also contains a provision permitting plaintiffs to bypass exhaustion under certain circumstances. 29 U.S.C. § 633a(d). As the Court will explain, that provision is not at issue here.

against federal agencies under the Rehabilitation Act to comply with Title VII procedures).[3] The necessary procedure begins with mandatory Equal Employment Opportunity ("EEO") counseling within 45 days of the alleged discriminatory acts. 29 C.F.R. § 1614.105(a)(1). Should counseling not resolve the employee's claims, he must then file an administrative complaint with his agency. Id. § 1614.106. The agency must subsequently conduct an investigation and issue a report within 180 days of receiving a complete complaint. Id. §§ 1614.106(e)(2), 1614.108(e). After receiving the agency's investigative report, the employee has 30 days to request a hearing and decision before an EEO administrative judge. Id. §§ 1614.108(f) & 1614.109. Should the employee elect an EEO hearing and decision, the agency must issue a final order on the complaint within 40 days of receiving the hearing file and the administrative judge's decision. Id. § 1614.110(a). Otherwise, the agency must issue a final decision within 60 days of receiving an employee's affirmative request for one or the end of the 30-day waiting period following the employee's non-response. Id. § 1614.110(b). The final

---

[3] In Congress v. District of Columbia, 277 F. Supp. 3d 82 (D.D.C. 2017) (Cooper, J.), this Court interpreted the Rehabilitation Act to not require exhaustion of administrative remedies. Id. at 87. The Rehabilitation Act provision at issue there, however, dealt with claims against recipients of federal funds or federal providers. See 29 U.S.C. § 794a(a)(2) (making available "[t]he remedies, procedures, and rights set forth in *title VI* of the Civil Rights Act of 1964" and in one subsection of Title VII "to any person aggrieved by any act or failure to act by any *recipient of Federal assistance or Federal provider of such assistance* under section 794 of this title" (emphasis added)); Congress, 277 F. Supp. 3d at 87 (noting that Title VI does not require administrative exhaustion). By contrast, Wright's claim, which is against a federal agency, implicates a different Rehabilitation Act provision that expressly incorporates Title VII's procedures. 29 U.S.C. § 794a(a)(1) (making available "[t]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16)"—*i.e.*, Title VII— "with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint"); see Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006) (holding that Title VII's exhaustion requirements apply to claims against federal agencies under the Rehabilitation Act); Judd v. Billington, 863 F.2d 103, 105 (D.C. Cir. 1988) (same).

agency decision must notify the employee of his right to appeal the decision to the Equal Employment Opportunity Commission ("EEOC") or to file a civil action in federal district court. Id.  The employee must then bring a federal suit within 90 days of receiving the final agency decision or within 30 days of receiving a right to file notice from the EEOC.  42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a).

    B.  Factual and Procedural Background

Wright has worked in the Office of Sustainable Fisheries since at least 2006.  Compl. ¶ 17.  Since 2012, he has allegedly experienced "harassment and retaliation" and "unfair bias" in the office that "has been passed on from one supervisor to the next."  Id.  On Christmas Day 2017, Wright contacted the agency's Office of Civil Rights to request EEO counseling concerning allegations of age, sex, and disability discrimination and retaliation.  Compl., Exh. 2, ECF No. 1-1 at 80–81.[4]

EEO counseling proving unfruitful, Wright filed his first administrative complaint with the agency's Office of Civil Rights on March 16, 2018.  Declaration of Paul Redpath ("Redpath Decl.") ¶ 2; 1st Admin. Compl., Gov. Mot. to Dismiss, Exh. 1.  The complaint alleged, among other things, that discrimination infected his negative performance reviews and rating, caused him to be passed over for a branch chief position in 2012, and was the reason that he was excluded from opportunities to gain exposure with senior leadership.  Compl. ¶¶ 17, 19–21; 1st Admin. Compl. 1–4.  After receiving the agency's investigative report, Wright lodged a request for a hearing before the EEOC, which he subsequently withdrew on July 29, 2019.  Gov. Mot. to

---

[4] Wright attached several exhibits to his complaint as a single document.  See ECF No. 1-1.  The Court references the ECF-generated page number rather than the page number at the bottom of some pages of the document.

Dismiss, Exh. 3 at 1–2.  On September 11, 2019, the Office of Civil Rights issued a final agency decision, which concluded that Wright's first administrative complaint failed to establish discrimination or retaliation.  Redpath Decl. ¶ 3; Gov. Mot. to Dismiss, Exh. 4 at 45.  The decision informed Wright of his right to appeal the decision to the EEOC within 30 days or to bring suit in federal district court within 90 days.  Id. at 46–47.

Undeterred, Wright filed a second administrative complaint with the agency's Office of Civil Rights on March 14, 2019.  Redpath Decl. ¶ 4; 2d Admin. Compl., Gov. Mot. to Dismiss, Exh. 5.  Wright again complained about various instances of alleged discrimination against him, including his negative Fiscal Year 2018 performance rating and reviews, his exclusion from higher leadership meetings, and the agency's delay in reimbursing him for work-related travel expenses.  Compl. ¶¶ 25–28; 2d Admin Compl. 1–4.  The agency sent Wright an investigative report, to which Wright did not respond.  Redpath Decl. ¶ 5.  On November 9, 2019, the agency issued a final agency decision finding no discrimination based on the facts alleged in the second administrative complaint.  Id.; Compl., Exh. 1.

Finally, Wright filed a third administrative complaint with the agency's Office of Civil Rights on August 8, 2019.  Redpath Decl. ¶ 6; 3d Admin. Compl. 1–9, Gov. Mot. to Dismiss, Exh. 7.  Wright subsequently made four requests between August and December 2019 to amend his complaint, each of which the agency granted.  Redpath Decl. ¶¶ 6–7; 3d Admin. Compl. 56–67.  In sum, the third administrative complaint includes allegations that the agency had improperly denied him an interview for a supervisory position and that discrimination colored his Fiscal Year 2019 performance rating and reviews.  Redpath Decl. ¶ 7; 3d Admin. Compl. 1–

9. The agency has not yet issued an investigative report or final agency decision on Wright's third complaint. Redpath Decl. ¶¶ 9, 11.[5]

On February 5, 2020, Wright filed suit in this Court against the Secretary of the Department of Commerce. The action encompasses all the claims of discrimination and retaliation that Wright raised in his three administrative complaints with the agency's Office of Civil Rights. Wright seeks an order compelling the agency to reinvestigate his complaints, a transfer or reassignment at his current grade and salary, promotion, modification of his performance rating, and compensatory damages. Compl. ¶¶ 82–95. The Government filed a motion to dismiss the claims that were raised in Wright's first administrative complaint as brought outside the statute of limitations and the claims that were raised in Wright's third administrative complaint as not administratively exhausted. The Court will convert the Government's motion into a motion for summary judgment and grant it.

## II. Legal Standards

Generally, "[a] motion to dismiss for a plaintiff's failure to exhaust administrative remedies is 'properly addressed as [a] motion[ ] to dismiss for failure to state a claim'" under Federal Rule of Civil Procedure 12(b)(6). Congress v. District of Columbia, 277 F. Supp. 3d 82, 86–87 (D.D.C. 2017) (Cooper, J.) (quoting Scott v. Dist. Hosp. Partners, 60 F. Supp. 3d 156, 161

---

[5] Agencies generally must complete their investigation of a formal complaint of discrimination within 180 days of receiving the complaint. 29 C.F.R. § 1614.108(e). Where an employee requests to amend the complaint, however, the timeframe for the agency's filing of an investigative report is extended to the earlier of 180 days after the last amendment or 360 days after the filing of the original complaint. 29 C.F.R. § 1614.108(f); Redpath Decl. ¶ 8; EEO Mgmt. Directive 110 § 5-32 (Aug. 5, 2015). Wright made his last amendment request on December 11, 2019, which extended the deadline for the agency's investigative report to June 8, 2020. Redpath Decl. ¶ 9. The agency informed Wright of this revised deadline on December 12, 2019 in the Third Amended Notice of Partial Acceptance. Id.; Gov. Mot. to Dismiss, Exh. 8.

(D.D.C. 2014)).  However, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  Here, both parties attach and refer to documents outside of the complaint that the Court relies upon in resolving the Government's 12(b)(6) motion.  See Kim v. United States, 632 F.3d 713, 719 (D.C. Cir. 2011) (requiring district courts to convert a motion to dismiss for failure to exhaust administrative remedies into a motion for summary judgment where the plaintiff's "alleged failure to exhaust d[oes] not appear on the face of the complaint" and the court must "refer to materials outside the pleadings in resolving [the] 12(b)(6) motion"). And, as required under Rule 12(d), both parties have had "a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).[6]  The Court will therefore convert the Government's motion to dismiss into one for summary judgment.  See Rosier v. Holder, 833 F. Supp. 2d 1, 5 (D.D.C. 2011) (doing the same).  The inquiry on summary judgment is whether any genuine issues of material fact exist.  Fed. R. Civ. P. 56.  In making that determination, the Court must draw all justifiable inferences from the evidence in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

"A plaintiff's untimely exhaustion of administrative remedies is . . . an affirmative defense, and the defendant first bears the burden of proving the inadequacy of the plaintiff's actions."  Byrd v. District of Columbia, 807 F. Supp. 2d 37, 58 (D.D.C. 2011) (citing Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997)).  If the defendant succeeds, the burden then shifts to the plaintiff to "plead[] and prov[e] facts supporting any reason for an equitable

---

[6] On April 10, 2020, the Court issued an order advising Wright that it might be necessary to convert the Government's motion to dismiss into a motion for summary judgment and the consequences were the Court to do so.  Order 2–3 (Apr. 10, 2020).  And, Wright has filed not only an opposition to the Government's motion to dismiss but also a sur-reply.

extension of administrative time limits." Id. (citing Hines, 594 F. Supp. 2d at 23).  The Supreme Court has explained that "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Menominee Indian Tribe v. United States, 136 S. Ct. 750, 755 (2016) (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)).  The "extraordinary-circumstances prong" encompasses only "matters outside [the litigant's] control," id. at 756—not circumstances that are "a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation," Head v. Wilson, 792 F.3d 102, 107 (D.C. Cir. 2015) (internal quotations omitted).

### III. Analysis

The Government seeks dismissal of the claims raised in Wright's first and third administrative complaints based on procedural default.  It argues: (1) that the claims related to Wright's first administrative complaint should be dismissed because they were brought outside the applicable statute of limitations and (2) that the claims related to his third administrative complaint should be dismissed because Wright failed to exhaust his administrative remedies. The Government concedes that Wright complied with the applicable exhaustion requirements and statute of limitations with respect to the claims raised in his second administrative complaint.

    A.  Claims Raised in Wright's First Administrative Complaint

The agency issued its final agency decision on Wright's first administrative complaint on September 11, 2019.  Gov. Mot. to Dismiss, Exh. 4.  Applying the more generous presumption that Wright received notice of the decision five days later, on September 16, 2019, see McGary v. McHugh, 49 F. Supp. 3d 83, 87 (D.D.C. 2014), the statutory deadline for him to file suit in federal district court was December 16, 2019, see 42 U.S.C. § 2000e-16(c); 29 C.F.R.

§ 1614.407(a).  "In general, '[c]ourts apply this limit strictly and will dismiss a suit for missing the deadline by even one day.'"  Galloway v. Watt, 185 F. Supp. 3d 130, 133 (D.D.C. 2016) (Cooper, J.) (quoting Woodruff v. Peters, 482 F.3d 521, 525 (D.C. Cir. 2007)).  Here, Wright filed suit on February 5, 2020, which was almost two months outside the limitations period.

The burden thus shifts to Wright to "plead[] and prov[e] facts supporting any reason for an equitable extension of administrative time limits."  Byrd, 807 F. Supp. 2d at 58 (citing Hines, 594 F. Supp. 2d at 23).  "As an initial matter, [Wright] clearly has not met his burden of proving any equitable reasons for his late filing," as "he fails to attach to his opposition any documentation or sworn affidavit relevant to the issue of equitable tolling."  Galloway, 185 F. Supp. 3d at 133.  At this stage, then, the Court has nothing more to go on than the bare allegations that Wright makes in response to the Government's motion to dismiss.  Even construing those allegations generously, see Johnson v. Gibson, 14 F.3d 61, 64 (D.C. Cir. 1994) (counseling courts to construe *pro se* complaints liberally), equitable tolling is unwarranted.

Wright's only response is that the agency's September 11, 2019 decision did not constitute its final decision on his first administrative complaint.  That is so, he contends, because the agency agreed to consolidate the claims from his first and second administrative complaints "during [EEOC] deliberations on May 9, 2019."  Pl. Opp. 1.  The agency did not issue its final decision on Wright's second administrative complaint until November 9, 2019.  Wright therefore argues that this date should also serve as the date of the agency's final agency decision on his first administrative complaint for purposes of the statute of limitations.

It is not clear from the record what agreement the parties may have made to consolidate claims from Wright's first and second administrative complaints during EEOC deliberations on May 9, 2019.  Pl. Opp. 1.  Even taking as true Wright's allegation that such an agreement was

reached, however, that agreement would only have applied to the EEOC hearing process, which, as the Government points out, is separate from an agency's processing of administrative complaints. 29 C.F.R. §§ 1614.108(f) & 1614.109. Cf. Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 150 (D.D.C. 2005) (rejecting plaintiff's argument that his requests for consolidation of his termination complaint (filed under the statutory process) with his earlier complaints (filed under his union's bargaining process) gave the court authority to consider his unexhausted termination complaint). And here, the undisputed record shows that although Wright initially requested a hearing before an EEOC administrative judge after receiving the agency's investigative report on his first administrative complaint, he later withdrew that request on July 29, 2019, and the EEOC dismissed his case two days later. Gov. Mot. to Dismiss, Exh. 3 at 1–2. Whatever consolidation of Wright's claims that may have been agreed to for the purposes of the EEOC proceedings therefore ended on July 31, 2019. That conclusion is reflected in the EEOC's dismissal order, which remanded the matter to the agency "for the issuance of a decision on the merits of the *complaint* in accordance with 29 C.F.R. Section 1614.110(b)." Id. at 1 (emphasis added). Notably, the agency used the singular "complaint" and not "complaints." Id. Moreover, the only agency case number in the caption of the EEOC's dismissal order matched that of Wright's first administrative complaint. Id. Therefore, the only "complaint" that the EEOC's dismissal order could be read to be referring to is the first administrative complaint.

Nor is there any language in the agency's final decisions on Wright's first or second administrative complaints that would indicate that the claims from the two cases had somehow been consolidated before the agency. To the contrary, the September 11, 2019 final agency decision on Wright's first administrative complaint unambiguously stated that "[t]his is the Department's final action on this matter," and advised Wright that he had either 30 days to

appeal the final decision to the EEOC or 90 days to file a civil action in federal district court. Gov. Mot. to Dismiss, Exh. 4 at 46–47. There is thus no factual basis for Wright's contention that his first and second administrative complaints had been consolidated such that the agency's November 9, 2019 decision on his second administrative complaint could be read to encompass the claims in both complaints. In any case, mere confusion about which administrative complaint was governed by which agency decision amounts "at best" to the type of "garden variety claim of excusable neglect" that does not warrant equitable tolling. Oviedo v. Wash. Metro. Area Transit Auth., 948 F.3d 386, 394 (D.C. Cir. 2020) (internal quotation marks omitted). The Court will therefore grant summary judgment to the agency on the claims that were raised in Wright's first administrative complaint.

    B.  Claims Raised in Wright's Third Administrative Complaint

Next, the Government argues that Wright's claims raised in his third administrative complaint, which currently remain pending before the agency, should be dismissed for lack of exhaustion. As explained, federal employees must exhaust their administrative remedies before filing suit in federal district court. See 42 U.S.C. § 2000e-16(c) (Title VII); 29 U.S.C. § 633a(b)–(d) (ADEA); id. § 794a(a)(1) (Rehabilitation Act). "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985).

At the time Wright filed the instant action, the agency had not yet issued an investigative report on his third administrative complaint, let alone a final agency decision. His claims relating to his third administrative complaint are therefore unripe for resolution at this time, as

Title VII requires employees to wait until after the agency has issued a final agency decision to bring suit in federal district court. See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a).[7]

With respect to his ADEA claim, Wright appears to invoke the statute's so-called "bypass provision." 29 U.S.C. § 633a(d). The ADEA provides two avenues for a civil action in federal district court: (1) an employee may pursue an administrative complaint using the Title VII processes (namely, by filing a complaint with the employing agency), id. § 633a(b); or (2) an employee may bypass the administrative complaint process and file a civil action within 180 days of the allegedly discriminatory event *so long as* the employee files notice with the EEOC not less than 30 days before filing the civil action of its intent to file such an action, id. § 633a(d); 29 C.F.R. § 1614.201(a). Wright does not allege—nor is there anything in the record to establish—that he filed an intent-to-sue notice with the EEOC prior to commencing this civil action. Rather, he merely asserts that he was not required to receive a Notice of Right to Sue letter from the EEOC prior to filing his ADEA claim. Pl. Opp. 4. That allegation is insufficient to establish that Wright complied with the ADEA's bypass provision. See Rann v. Chao, 346

---

[7] Title VII separately provides that an employee may file a civil action after more than 180 days have passed since the employee's filing of an administrative complaint with the agency and no final action has been taken. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(b). Although Wright filed this civil action 183 days after he initially filed his third administrative complaint, he amended that complaint several times in the interim. As explained, under the Title VII regulations, the amendment of an employee's administrative complaint extends the deadline for the agency to complete its investigation to the earlier of 180 days after the last amendment or 360 days after the initial complaint. 29 C.F.R. §§ 1614.106(e)(2) & 1614.108(f); EEO Mgmt. Directive 110 § 5-32 (Aug. 2, 2015); Howard v. Gutierrez, No. 08-CV-0421 (PLF), 2009 WL 536585, at *3–4 (D.D.C. Mar. 3, 2009) (noting the same). In this case, the agency has until June 8, 2020 to file its final investigative report, Redpath Decl. ¶¶ 8–10, and an additional 60 days to issue its final decision following any request from Wright for an immediate final decision or the end of the 30-day period for Wright to make such a request, 29 C.F.R. § 1614.110(b).

F.3d 192, 198 (D.C. Cir. 2003) ("[T]he plain language of [the ADEA] requires the filing of a notice of intent to sue with the EEOC[.]").

Taking a different tack, Wright points out that the claims in his third administrative complaint "are all interrelated [with] and include the same managers" as the claims in his second administrative complaint, so all of his claims should "be addressed by the Court at the same time." Pl. Opp. 3.  Be that as it may, exhaustion is necessary for all discrete acts of discrimination and retaliation.  See generally Poole v. U.S. Gov't Publ'g Office, 258 F. Supp. 3d 193, 201 (D.D.C. 2017), aff'd, No. 17-5189, 2018 WL 4147231 (D.C. Cir. Aug. 9, 2018) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002)); Prescott-Harris v. Fanning, No. 15-CV-1716 (RC), 2016 WL 7223276, at *3 (D.D.C. Dec. 12, 2016).  Wright therefore cannot attach the unexhausted claims in his third administrative complaint onto this suit.

Finally, Wright seems to complain more generally about his experience before the agency's Office of Civil Rights and the EEOC.  See, e.g., Pl. Opp. 2–3 (asserting that there was an inadequate investigation of his administrative complaints); Pl. Sur-Reply 1–4 (contending that the EEOC did not act in good faith).  To be sure, "[e]xhaustion of administrative remedies is not required where exhaustion would be futile." Harris v. Attorney Gen. of the United States, 657 F. Supp. 2d 1, 13 (D.D.C. 2009) (citing Brown, 777 F.2d at 14).  But, that exception only applies where the administrative process would be "'clearly useless,' either because the agency . . . has indicated that it does not have jurisdiction over the dispute, or because it has evidenced a strong stand on the issue in question and an unwillingness to reconsider the issue." Randolph-Sheppard Vendors of America v. Weinberger, 795 F.2d 90, 105–06 (quoting Baxter v. Claytor, 652 F.2d 181, 185 (D.C. Cir. 1981)).  It does not apply to unsubstantiated allegations of agency bad faith. See generally Koch v. Walter, 935 F. Supp. 2d 143, 153 (D.D.C. 2013) (requiring plaintiff to

participate in good faith in the administrative process despite his repeated accusations that the agency's staff were "working actively to frustrate access to the [EEO] process").

## IV. Conclusion

For the foregoing reasons, the Court grants summary judgment to the Government on the claims raised in Wright's first and third administrative complaints and dismisses all claims brought under the ADA, Family and Medical Leave Act, Equal Pay Act, and Fair Labor Standards Act for failure to state a claim. The only remaining claims are the Title VII, ADEA, and Rehabilitation Act claims raised in Wright's second administrative complaint. A separate order follows.

Date: <u>June 10, 2020</u>

CHRISTOPHER R. COOPER
United States District Judge